MASTERS, n.k.a. Collins, Appellee,

v.

MASTERS, Appellant.

[Cite as *Masters v. Masters*, 191 Ohio App.3d 308, 2010-Ohio-5961.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–090518.

Decided Dec. 8, 2010.

Goldie Collins, pro se.

Thomas J. Ruwe, for appellant.

CUNNINGHAM, Presiding Judge.

{¶ 1} Defendant-appellant, Melvin T. Masters Jr. ("Melvin"), and plaintiff-appellee Goldie M. Masters, n.k.a. Goldie Collins ("Goldie"), were married on August 2, 1985. They had two sons, Nicholas and Christopher. The parties were divorced by decree entered January 7, 2003. The parties executed an agreed entry that was incorporated into the decree of divorce.

{¶ 2} The divorce decree designated Melvin as the residential parent and legal custodian of the children. The decree provided that Goldie was to maintain health insurance for the children. Melvin was to pay the first $100 per child in uninsured medical expenses, including copayments and deductibles, each calendar year. Uninsured medical expenses in excess of $100 per child each calendar year were to be divided equally between the parties. Melvin was designated to receive any reimbursement from the health-insurance provider.

{¶ 3} The decree stated, "Husband shall consult Wife in all major decisions affecting the education or health care of their minor children. Major decisions by Husband on all education and health care issues shall be made only after consultation between the parties. If the parties do not reach an agreement on a major issue after discussing, Husband as residential parent will make the decision." The decree further stated, "Due to the financial circumstances of the parties, and the fact that any changes in Wife's income will have little if any effect on the amount of child support to be paid, the parties agree, and the Court finds, that it is in the best interest of the children to use the attached worksheet until Husband obtains employment, at which time the Court will have jurisdiction to recalculate support and to resolve the issue of whether or not Husband shall provide secondary health insurance for the minor children."

{¶ 4} Throughout 2004 and until May 1, 2005, Goldie maintained health insurance for the children through her employer's insurance plan. Melvin submitted all medical expenses to Goldie's employer's insurance carrier until August 2004. He notified Goldie of her share of the uncovered medical expenses, but he received no payment. Melvin remarried in August 2004, and the children were added to the health-insurance coverage provided by his new wife's employer. Melvin did not consult Goldie or seek court permission before adding the children to his new wife's policy.

{¶ 5} After May 1, 2005, Goldie's employer provided a high-deductible health-insurance policy through United Health Care. Under Goldie's new insurance, the yearly deductibles were $3,000 for each individual and $6,000 per family. No prescription coverage was available until the deductibles were met. Employees were permitted, but not required, to contribute pre-tax dollars to a health savings account, which could be used to pay medical expenses. Pre-tax dollars were not

permitted to be used to pay for medical expenses for anyone who was covered under another insurance policy. Therefore, because the children were covered under Melvin's new wife's policy, Goldie would not be permitted to contribute pre-tax dollars to a health savings account to pay their uncovered medical expenses. It is undisputed that after May 1, 2005, it was financially beneficial to the parties for the children to use the health insurance provided by Melvin's new wife's employer.

{¶ 6} Between January 1, 2004, and June 30, 2005, Melvin incurred uncovered medical expenses on behalf of the children. It is undisputed that Goldie's share of those expenses was $1,912.54, which she has refused to pay.

{¶ 7} On August 25, 2005, Melvin filed a motion for contempt against Goldie, alleging that she had violated the divorce decree by failing to pay her share of the children's uncovered medical expenses. Goldie filed a motion for contempt against Melvin on December 5, 2005, alleging that Melvin had violated the decree by failing to consult her regarding major decisions involving the children's medical care. Goldie argued that "major decisions" included whether to cover the children under Melvin's new wife's policy.

{¶ 8} After a series of hearings, the magistrate determined that both Melvin and Goldie had "unclean hands," Goldie for failing to pay her share of the uncovered medical expenses, and Melvin for failing to seek court approval and to consult Goldie before adding the children to his new wife's insurance policy. The magistrate dismissed both motions for contempt, stating that because both parties "came before the Court with unclean hands," the court should "leave them as they are."

{¶ 9} Goldie did not object to the magistrate's decision. Melvin filed objections to the magistrate's decision. With one exception, the trial court overruled Melvin's objections. The court's entry stated, "Wife has failed without good cause to comply with the order of this court regarding the payment of her share of medical expenses incurred on behalf of her two sons from January, 2004 through June 18, 2005. Husband has failed without good cause to comply with the orders of this court requiring Wife to maintain primary health insurance for Nicholas and Christopher Masters and to consult with Wife on major issues involving their health care." The court denied both motions for contempt.

{¶ 10} Melvin has appealed, raising one assignment of error for our review, which alleges that the trial court erred in overruling his objections, in adopting, with one exception, the magistrate's decision, and in denying his motion for contempt. An appellate court applies an abuse-of-discretion standard in

reviewing the trial court's decision whether to hold a party in contempt.[1]

{¶ 11} Melvin first argues that the trial court erred in determining that he had violated the divorce decree by adding his children to his new wife's insurance policy without first obtaining the court's permission. The magistrate found that the unambiguous language in the divorce decree placed Melvin "under an affirmative duty to invoke the continuing jurisdiction of the court" before adding the children to his new wife's insurance policy. Further, the magistrate found that Melvin "was required to comply with the court order which stated that [Goldie] was to maintain health insurance coverage for their sons until such time as that order was modified by the court." The trial court adopted these findings, determining that the decree dictated that Goldie "alone" was required to provide health insurance for the children and that Melvin had "attempted to unilaterally modify the terms of the decree" by adding the children to his new wife's policy.

{¶ 12} The order in the divorce decree is directed to Goldie, requiring her to maintain health insurance for the children. A review of the plain language of the decree shows that the court did not order that Goldie was to be the "sole" provider of health insurance for the children. Because Melvin was unemployed at the time the decree was entered, the court did not order him to provide insurance coverage. The decree stated that once Melvin became employed, the trial court "would resolve the issue of whether" Melvin was required to provide health insurance. But nothing in the decree precluded him from voluntarily obtaining health insurance for his children or required him to seek permission of the court before doing so. We hold that the trial court erred in determining that Melvin had violated the divorce decree by adding his children to his new wife's insurance policy without first obtaining the court's permission.

{¶ 13} Melvin next argues that the trial court erred in determining that he had violated the divorce decree by adding his children to his new wife's policy without first consulting Goldie. The parties' agreed entry, which was incorporated into the decree of divorce, stated that Melvin "shall consult [Goldie] in all major decisions affecting the education or health care of their minor children" and that "[m]ajor decisions by [Melvin] on all education and health care issues shall be made only after consultation between the parties." The decree further provided that Melvin was to make the decision if the parties could not reach an agreement on a "major issue."

{¶ 14} The magistrate noted in his decision that "[t]he word 'major' is not defined by the Ohio Revised Code. Nor is the word defined by the parties within the context of their agreement to consult on major medical decisions involving

---

1. See *Wolf v. Wolf*, 1st Dist. No. C–090587, 2010-Ohio-2762, 2010 WL 2473277, ¶ 4.

their sons." Citing the "Merriam Webster Online Dictionary," the magistrate defined "major" as "greater in dignity, rank, importance, or interest" and determined that the decision to add the children to Melvin's new wife's policy was "a major decision about which [Melvin] was required to consult with [Goldie] prior to making." The trial court adopted that finding.

{¶ 15} We believe that the magistrate's focus on the definition of "major" was misplaced. The question as we see it is not whether the decision to add the children to Melvin's new wife's policy was a "major decision," but whether it was a decision "on health care issues."

{¶ 16} The language in question appears in the parties' agreed entry of December 9, 2002, which was ultimately incorporated into the divorce decree. The decree does not define "health care issues."

{¶ 17} R.C. 3119.29(A)(3) defines "health care" in the context of the calculation of child-support obligations as "such medical support that includes coverage under a health insurance plan, payment of costs of premiums, co-payments, and deductibles, or payment for medical expenses incurred on behalf of the child." But the parties were not addressing support obligations in the part of the agreement relating to consultation on "health care issues." The support provisions appear in a different part of the decree. Further, employing the R.C. 3119.29(A)(3) definition would require that Melvin consult Goldie only on issues involving the payment of medical expenses incurred on behalf on the children and not on issues involving the actual medical treatment administered to them. A reading of the "consultation" language in context clearly shows that the parties did not intend such a result.

{¶ 18} R.C. 1337.11, which deals with powers of attorney for health care, states, "'Health care' means any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition or physical or mental health."[2] We hold that the parties intended to adopt the more traditional definition of "health care" contained in R.C. 1337.11, and that "major decisions on health care issues" as contemplated in the decree of divorce involved decisions concerning the actual medical treatment administered to the children by health-care professionals and not issues relating to health-insurance coverage for that treatment. Our conclusion is buttressed by the fact that the provision in the divorce decree requiring Melvin to consult with Goldie regarding "major decisions" "on health care issues" is separate from the health-insurance provisions of the decree, indicating that health-insurance issues were not to be included in "major decisions" on "health care issues." We hold that the trial court erred in

---

2. See R.C. 1337.11(G).

determining that Melvin had violated the divorce decree by adding the children to his new wife's health-insurance policy without first consulting Goldie.

{¶ 19} We hold that the trial court abused its discretion in denying Melvin's motion for contempt against Goldie on the basis that Melvin had violated the decree by adding his children to his new wife's health-insurance policy without obtaining the court's permission and without consulting Goldie. The assignment of error is sustained. The trial court's judgment denying Melvin's motion for contempt is reversed, and this cause is remanded for the trial court's reconsideration of Melvin's contempt motion in light of our holding in this decision.

Judgment reversed
and cause remanded.

HILDEBRANDT and MALLORY, JJ., concur.